FILED

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

99 FEB 24 AM 10: 06

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| **FEDERAL TRANSTEL, INC.**, | ] | |
| Plaintiff(s), | ] | |
| vs. | ] | CV 98-N-1726-S |
| **ALLSTATE COMMUNICATIONS, INC.**, | ] | |
| Defendant(s). | ] | |

| | | |
|---|---|---|
| **ALLSTATE COMMUNICATIONS, INC.**, | ] | |
| Plaintiff(s), | ] | |
| vs. | ] | CV 98-N-2627-S |
| **FEDERAL TRANSTEL, INC., et al.**, | ] | |
| Defendant(s). | ] | |

ENTERED
FEB 24 1999

## Memorandum of Opinion

### I.   Introduction.

The court has for consideration Allstate Communications, Inc.'s (ACI) motion to dismiss case number CV-98-N-1726-S, filed October 22, 1998, and motion to strike plaintiff's First Amended Complaint in the same case, filed February 17, 1999. The issues have been briefed by both parties and are now ripe for decision. Upon due consideration, both motions will be denied.

39

The complaint in case number CV-98-N-1726-S centers on an agreement between ACI and the plaintiff, Federal Transtel, Inc. (FTT), under which FTT agreed to perform certain billing and collection services for ACI's 900 phone numbers. The contracts between the parties reveal that FTT originally transferred the rights to a number of 900 numbers to ACI in exchange for an exclusive contract to perform the billing services for those numbers. The original agreement was embodied in two documents, an Irrevocable Use Rights Transfer Agreement (the "Use Rights Agreement"), attached as Exhibit A to the complaint, and a Billing and Collection Services Agreement (the "Original Billing Agreement"), attached as Exhibit 1 to defendant's reply brief in support of its motion to dismiss.[1] These documents provided in part that FTT was to have the "exclusive right to provide billing and collection services for the . . . numbers assigned to ACI pursuant to [the Use Rights] agreement" Use Rights Agreement, ¶ 4.1; see Original Billing Agreement, at 1 ("[ACI] hereby agrees that FTT shall be the sole provider of Billing and Collection Services for all of the line numbers that are provided to [ACI] by FTT.").

As part of a restructuring of the parties' financial arrangements, the parties later altered this key aspect of their relationship by executing an amendment (the "Use Rights Amendment") to the Use Rights Agreement, attached as Exhibit 1 to Exhibit A to the defendant's brief in support of its motion to dismiss, and by entering into a new Billing and Collection Services Agreement (the "Current Billing Agreement"), attached as Exhibit B to the complaint. The Use Rights Amendment made it clear that FTT no longer had exclusive

---

[1] The court assumes, without deciding, that it can rely on these documents in its analysis without converting the motion to dismiss into a summary judgment motion. See infra note 5.

2

rights to perform all billing and collection services on the numbers it had provided to ACI. Instead, the parties agreed that "ACI is not obligated to use the services of FTT for billing and collection for the . . . numbers assigned to ACI pursuant to the [Use Rights] Agreement." The exclusivity language of the Original Billing Agreement also went by the wayside. However, the new billing agreement also added a provision not found in the original. Under the terms of the Current Billing Agreement, "Client [ACI] represents and warrants that all Call Detail[2] transmissions submitted to FTT for billing shall contain not less than seventy-five percent (75%) of its Gross Calls which originate from Callers in Bell Operating Company[3] areas." Current Billing Agreement, at 1. It is this clause which forms the basis for FTT's claim in its original complaint, and around which the bulk of the parties' dispute now swirls.

Essentially, the parties disagree about whether this clause should be read as a quality guarantee or a quantity guarantee. In FTT's version, the key figure in the 75% clause is ACI, and it is ACI's Gross Calls, defined previously in the agreement to include all calls received by ACI whether through FTT's network or otherwise, which must meet the 75% test. "**[ACI]** represents and warrants that all Call Detail transmissions submitted to FTT for billing shall contain not less than seventy-five percent (75%) of **its Gross Calls** which originate from Callers in Bell Operating Company areas." Thus according to FTT's complaint, the clause "requires ACI to submit to plaintiff for billing 'not less than . . . 75%'

---

[2]"Call Details" are simply the "applicable call details of calls initiated by customers of [ACI]." Current Billing Agreement, at 1.

[3]The parties agree that this term refers to the seven regional phone companies created by the ATT break-up. The court assumes that these companies provide coverage over much of the United States.

3

of its calls from consumers" within the designated areas. *Complaint*, ¶ 16. Read this way, the clause guarantees a certain *quantity* of billing work – 75% of ACI's Bell Operating Company calls.

ACI advances a very different reading of the clause. According to ACI, the 75% clause imposes a restriction on each set of Call Details submitted to FTT, requiring that at least 75% of the calls contained in each set must come from Bell Operating Company areas. In ACI's reading, the focus of the clause is not ACI but the "Call Detail transmissions," and it is this phrase to which "its Gross Calls" refers. Thus "**all Call Detail transmissions** submitted to FTT for billing shall contain not less than seventy-five percent (75%) of **its Gross Calls** which originate from Callers in Bell Operating Company areas." The clause therefore guarantees something about the *quality* of the work submitted to FTT. At least 75% of it will be made up of Bell Operating Company calls. In ACI's view, there is no quantity promise in the Current Billing Agreement at all.

FTT's original complaint, based of course on its reading of the agreement, alleged only that ACI failed to carry out its promises in terms of quantity. No defects in the quality of the work offered FTT was alleged. Therefore ACI contends that plaintiff's claim is due to be dismissed if ACI's interpretation of the contract is found to be the correct one.

ACI also argues that, even if it did breach the Current Billing Agreement, another clause of that agreement bars recovery of the damages sought by FTT. The liability limitations clause of the agreement forbids recovery of "any indirect, special incidental [sic] or consequential losses or damages, including, without limitation, loss of revenue, loss of customers, loss of goodwill or loss of profits." Current Billing Agreement, at 5.

4

According to ACI, FTT's claims for "billing and collection charges and customer service charges, expenses, taxes, chargebacks and other charges, adjustments, or interest," Complaint ¶ 21, all fall within the agreement's proscription, so that FTT has no recoverable damages upon which to base its contract action. ACI therefore urges that the complaint should be dismissed on this ground as well.

FTT has now sought to add further arguments of its own in favor of the continued vitality of this case. FTT has filed an amended complaint adding a claim unrelated to the 75% clause. Essentially, FTT now seeks to collect payments owed under the Current Billing Agreement for services FTT has already performed for ACI. FTT argues that this claim bypasses the objections raised in ACI's motion to dismiss, and so provides an alternate reason to deny that motion. ACI disagrees, and has filed a motion to strike asking the court to ignore the amended complaint and rule on the dismissal of FTT's original claims. ACI suggests that FTT can then pursue its new claims in the consolidated action, case number CV-98-N-2627-S, and that this arrangement, rather than the survival of both cases, is the most favorable result in terms of efficiency.

## II.     Governing Legal Standards.

In this diversity action the court is bound to apply appropriate state substantive law. The Current Billing Agreement specifies that Georgia law governs the contract, so the court must refer to the law of that state in addressing the substantive questions raised by ACI's motion.

The court must also keep in mind the very early stage at which these questions have been presented. The court is empowered to dismiss an action "for failure to state a claim

5

upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Such a motion should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02, 2 L. Ed. 2d 80 (1957) (citations omitted). The court must take factual allegations as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff. *In re Johannessen*, 76 F.3d 347, 350 (11th Cir. 1996). A complaint should be dismissed, however, if it is clear that no relief could be granted even crediting plaintiffs' allegations of the facts. *See id.* at 349.

In evaluating a 12(b)(6) motion, the court may consider only the information contained in the complaint. However, contracts submitted as attachments to the complaint may be considered under Rule 12(b)(6) without converting the motion into one for summary judgment. See Fed. R. Civ. P. 10(c); *Cortec Ind., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991); *I. Meyer Pincus & Assoc. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991). "It follows that where plaintiff's cause of action arises out of a contract which is attached to his complaint as an exhibit, and where such contract shows unambiguously on its face that the relief prayed for is not merited, then dismissal is appropriate."[4] *Jacksonville Newspaper Printing Pressmen & Assistants' Union No. 57 v. Florida Publishing Co.*, 340 F. Supp. 993, 995 (M.D. Fla.), *aff'd*, 468 F.2d 824 (5th Cir. 1972),

---

[4] Several of the documents already discussed and relied on by ACI in constructing its argument were not attached to the complaint. However, they were intricately linked with the contracts which were attached. Therefore the court will assume, for the purposes of discussion, that it could rely on these documents in granting a motion to dismiss. *See Johns v. Town of East Hampton*, 942 F. Supp. 99 (E.D.N.Y. 1996); *Tee v. UAL Corp.*, 902 F. Supp. 1572, 1576 n.3 (N.D. Ga. 1995). However, given the court's disposition of the motion, it need not reach a final conclusion on this question.

6

*cert. denied*, 411 U.S. 906 (1973) (citing *Case v. State Farm Mutual Ins. Co.*, 294 F.2d 676 (5th Cir. 1961)). In other words, "dismissal is appropriate if the court finds that no possible relief can be granted under any construction of the contract sued upon." *Breckenridge Creste Apartments v. Citicorp.*, 826 F. Supp. 460, 464 (N.D. Ga. 1993), *aff'd*, 21 F.3d 1126 (11th Cir. 1994) (citing *Florida Publishing Co.*, 340 F. Supp. at 995)

Georgia courts have made it clear that the interpretation of a contract is ordinarily a question of law for the court. *See Travelers Ins. Co. v. Blakey*, 342 S.E.2d 308 (Ga. 1986). "Contract construction is a three-step process. . . . First, if no ambiguity appears, the trial court enforces the contract according to its terms irrespective of all technical or arbitrary rules of construction. That is, where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties. Secondly, if ambiguity does appear, the existence or non-existence of an ambiguity is itself a question of law for the court." *Duffett v. E. & W. Properties*, 430 S.E.2d 858, 859 (1993). "'[I]f it is ambiguous, the trial court must then apply the applicable rules of construction (O.C.G.A. § 13-2-2).'" *Municipal Elec. Authority v. City of Calhoun*, 489 S.E.2d 599, 602 (1997) (quoting *Karlan, Inc. v. King*, 415 S.E.2d 319 (Ga. Ct. App. 1992)). "The cardinal rule of construction is to ascertain the intention of the parties," O.C.G.A. § 13-2-3, and the court must take into account the entire contract and the surrounding circumstances in conducting its analysis. *See* O.C.G.A. § 13-2-2. "'[I]f after doing so the trial court determines that an ambiguity still remains, the trier of fact must then resolve the ambiguity.'" *Municipal Elec. Authority*, 489 S.E.2d at 602.

For this reason, contract construction is typically a legal matter suitable for summary disposition. Indeed, "rules of contract construction and interpretation are separate from those rules allocating burdens of proof at trial and on motion for summary judgment," and thus are to be independently applied. *Thomas v. American Global Ins. Co.*, 493 S.E.2d 12, 13 (1997). Thus in resolving dispositive motions the court must work from the "basic premise that 'even ambiguous contracts may be construed by the courts, and a jury question is presented only when the application of the rules of construction fails to resolve the ambiguity.'" *Andrews v. Skinner*, 279 S.E.2d 523, 525 (Ga. Ct. App. 1981) (quoting *L. Gregg Ivey, Inc. v. Land*, 252 S.E.2d 88 (Ga. Ct. App. 1979)). However, as the discussion above reveals, the court's own inquiry is far-reaching, so the court must ensure that all relevant information is before it prior to construing an ambiguous contract.

### III. Discussion.

#### A. The 75% Clause.

The court has thoroughly reviewed the complaint and the relevant contract documents, which make up the only record available for consideration on a motion to dismiss. Based on that review, the court concludes that the language of the disputed 75% clause is ambiguous. In fact, the clause resembles nothing so much as a linguistic Escher drawing – its meaning appears to change under your very eyes. The court agrees with FTT that, from a purely technical and grammatical standpoint, the language bears FTT's meaning more easily. FTT's reading is also consistent with the word usage in the remainder of the Current Billing Agreement (e.g. the use of "Gross Calls" and "its"). On the other hand, grammatical rules aside, the words used can also bear the meaning

8

advanced by ACI. More importantly, this meaning appears to fit more consistently with the other provisions of the parties' agreements. Thus the court can reach no definite conclusion as to the meaning of the clause based on the contractual language alone.

However, that conclusion takes the court only to step two of Georgia's contract interpretation process. The court will therefore be required to embark on a thorough analysis of the contracts at issue and the circumstances surrounding them, in light of the legal rules of contract construction. *See, e.g.,* O.C.G.A. § 13-2-3. Both parties, however, have assumed for purposes of this motion that the 75% clause was in fact unambiguous, though disagreeing of course about what the language clearly says. Therefore neither party has briefed the court thoroughly on the proper application of the rules of construction to the contracts at issue.[5] Additionally, the evidence bearing on the circumstances surrounding the contracts and other matters which may affect the court's analysis has not been adequately developed at this point. Therefore the court finds it inappropriate to embark on a full-scale evaluation of the clause's meaning at this early stage of the litigation. That will have to wait for another day. Suffice it to say at this point that the defendant has not proved "that no possible relief can be granted under any construction of the contract sued upon." *Breckenridge Creste Apartments,* 826 F. Supp. at 464. ACI's motion to dismiss therefore cannot be granted on this ground.

---

[5] Nor have the parties addressed the question of whether this is one of the rare cases in which the contract language is so ambiguous that submission to a jury is the proper course of action. *See, e.g., American Honda Motor Co. v. Williams & Assoc., Inc.,* 431 S.E.2d 437 (Ga. Ct. App. 1993).

9

### B.    The Liability Limitation Clause.

ACI argues that, even if FTT has a viable breach of contract claim, it has no damages which can be recovered under the contract's restrictive liability limitations clause. As the court has already noted, the Current Billing Agreement forbids recovery of "any indirect, special incidental [sic] or consequential losses or damages, including, without limitation, loss of revenue, loss of customers, loss of goodwill or loss of profits." Current Billing Agreement, at 5. These sweeping limitations on recovery are apparently valid and enforceable under Georgia law. *Imaging Systems Intl. v. Magnetic Resonance Plus*, 490 S.E.2d 124, 127 (Ga. Ct. App. 1997)

However, ACI's argument that this clause forbids any damage recovery by FTT[6] appears to ignore the critical distinction between direct, compensatory damages, and indirect damages, a distinction which the Georgia courts have emphasized in several cases. "Consequential damages, which may include 'profits which might accrue collaterally as a result of the contract's performance,' are a separate concept from direct damages, which may include 'profits necessarily inherent in the contract.' Thus there are two types of lost profits: (1) lost profits which are direct damages and represent the benefit of the bargain (such as a general contractor suing for the remainder of the contract price less his saved expenses), and (2) lost profits which are indirect or consequential damages such as what the user of the MRI would lose if the machine were not working and

---

[6] It is not clear from the complaint exactly what all the particular damages claims enumerated by FTT refer to. The court suspects that some of these terms refer to direct damages, i.e. FTT seeks to recover the benefit of its bargain. Even if not, however, at this stage the court will not be overly technical in its assessment of FTT's damage claims. If it appears that any type of damages may be recoverable, the motion to dismiss should be denied, whether or not FTT has listed that particular type of damage in its complaint.

10

he was unable to perform diagnostic services for several patients." *Imaging Systems Intl.*, 490 S.E.2d at 127 (quoting *Franklin v. Demico, Inc.*, 347 S.E.2d 718, 721 (1986)). While the contract's language clearly excludes the latter type of damages, it does not appear to bar the recovery of direct damages of the former type.[7] If FTT's allegations are true, and it was denied business promised under the contract, the court feels certain that some type of direct damages would flow from such a breach. The liability limitations clause would not bar FTT's attempts to recover the benefit of its bargain. ACI's motion to dismiss therefore cannot be granted on the basis of this contract clause either. It will therefore be denied.

### C. The Motion to Strike.

The court agrees with ACI that these consolidated cases appear to be closely linked, and indeed may well be tried together. It thus may make little sense to keep them separated administratively, and the court and the parties should perhaps consider some plan to winnow the two down into one. However, the court sees no reason to unilaterally shift claims from one case to another at this point. As the plaintiff's motion to dismiss is not due to be granted, both cases will continue to exist for the time being. Within limits, a plaintiff is entitled to choose in which case he files his claims. Therefore the court will not now bar FTT from filing additional claims in either of the pending actions. Defendant's motion to strike will also be denied.

---

[7] ACI may be able to argue that the clause's reference to profits was intended to bar recovery of *any* profits, *see id.*, but ACI has certainly not convinced the court at this point that the contract's language should be read this way.

11

## IV.    Conclusion.

The court cannot conclude at this point that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. at 45-46.  Both of defendant's motions will therefore be denied. The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this _____ of February, 1999.

_____
EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE

12